IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICTOR REYES** : | **CIVIL ACTION** |
|  : |  |
|     v. : | **NO. 15-2972** |
|  : |  |
| **XPO LAST MILE, INC.** : |  |

### MEMORANDUM OPINION

**SCHMEHL, J.   /s/ JLS**                                                                                     **JULY  28, 2016**

      This proposed class action was originally filed by plaintiff in the Court of Common Pleas of Philadelphia County, then removed by defendant to this court on the basis of diversity of citizenship and on the basis that it meets certain requirements for a federal class action under 28 U.S.C. § 1332(d). Plaintiff claims that the defendant violated the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. Ann. §§ 260.1, et seq., by making unauthorized deductions from the pay of plaintiff and other putative class members. Presently before the Court is the motion of the defendant for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Because resolution of the motion requires the Court to consider materials outside the scope of the pleadings, the Court will treat the motion as a motion for partial summary judgment. For the reasons that follow, the motion is granted.

      Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of

material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

In a Declaration in support of defendant's motion, Duane A. Duenkel, Jr. avers that he is the Vice President of Field Support Services at defendant XPO Last Mile, Inc. ("XPO"). (ECF 16-2 ¶ 1.) According to the Declaration, XPO is a "federally authorized freight forwarder and full service logistics solutions company that operates under interstate authority issued by the Federal Motor Carrier Safety Administration ("FMCSA")." (Id. ¶ 2.) "As part of its freight forwarding operations, XPO arranges for the delivery and set up of retail customer's products by contracting with federally authorized motor carriers ("Contract Carriers") to perform transportation and delivery services for its customers. XPO is not authorized or licensed to provide the motor carrier services

provided by the Contract Carriers." (Id. ¶ 4.) "XPO enters into a Delivery Service Agreement ("DSA") with each Contract Carrier. Since April 20, 2012, XPO has contracted with 117 Contract Carrier companies, including 76 limited liability companies, 28 business corporations, 12 sole proprietors, and one partnership. For services performed under the DSA, XPO makes payments directly to these Contract Carrier companies through their Federal Identification Numbers. To the extent XPO offsets any payments to Contract Carriers, the amounts would appear in the settlement payments to the Contract Carriers. XPO does not take deductions from or make payments to any individual. All payments to Contract Carriers are made to a federal identification number." (Id. ¶ 5.)  In August 2013, XPO acquired 3PD Holding, Inc. ("3PD"). (ECF 1 ¶ 6.)

It is undisputed that each Contract Carrier entered into an agreement with XPO to provide delivery services. Each Contract Carrier's agreement states that the Contract Carrier is entering into an independent contractor relationship with XPO. (ECF 16-3 § 4.1.) ("XPO Last Mile and Contract Carrier intend that this Agreement is strictly between two independent entities and does not create an employer/employee relationship for any purpose."). Under their agreements, each Contract Carrier is responsible for paying "all contributions, taxes …required to be paid by an employer in accordance with all applicable state unemployment insurance, disability benefits and withholding tax laws …" (Id. § 4.4.) Contract Carriers also have discretion over the management of their delivery operations, including "hours of work, what route. . .to follow, [and] other details of service," (id. § 4.2), hiring, firing and managing their workers, (id. 4.5) and the means of ensuring that deliveries are completed in accordance with the requirements imposed

by the retail store customers. (Id. § 4.2.) ("[T]he ultimate determination regarding the methods by which the purposes of this Agreement are to be accomplished is entirely committed to Contract Carrier.")

Plaintiff defines the proposed class as consisting of "all Pennsylvania residents who, during any time within the past three years [April 20, 2012 through April 20, 2015], (i) delivered, assembled, and/or installed items at end-consumers' homes or businesses and (ii) were paid directly by XPO (including 3PD) in either their individual capacities or through personal corporate entities." (ECF 1 ¶ 12.) Plaintiff alleges that during the relevant three year period, XPO(including 3PD) employed at least 50 individuals in Pennsylvania who delivered items to end-consumers' homes or businesses and assembled/installed the items at the end-consumer's homes or business [Installers"]." (Id. ¶ 7.) Plaintiff alleges that he was employed by 3PD as an Installer from approximately October 2008 until approximately October 2013. (Id. ¶ 8.) Plaintiff alleges that the unlawful deductions XPO subjected plaintiffs to include, *inter alia*, "insurance premiums, damage to end-consumers' homes and businesses, loan repayments, truck leases, service fees, settlement fees, administration fees, and driver qualification fees."(Id. ¶ 9.)

"The WPCL `does not create an employee's substantive right to compensation; rather it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.'" Hartman v. Baker, 766 A. 2d 347, 352 (Pa. Super. 2000)(quoting Banks Eng'g Co., Inc. v. Polona, 697 A. 2d 1020, 1024 (Pa. Super. Ct. 1997)). The WPCL "provides employees a statutory remedy to recover wages and other benefits that are

contractually due to them." <u>Oberneder v. Link Computer Corp.</u>, 696 A. 2d 148, 150 (Pa. 1997).

In its motion, XPO seeks to exclude from the putative class all business corporations, limited liability companies and partnerships which contracted with XPO, and all individuals who were paid through those corporate entities. This amounts to excluding the claims of 105 of the 117 putative class members. Defendant does not at this time seek to exclude the claims of the 12 putative class members, including those of plaintiff, who signed DSAs as sole proprietors.

We begin with the individuals who were paid through corporate entities. XPO argues that these individuals must be excluded because they were not parties to any employment contract with XPO to which WPCL-protected wages are due.

Judge Berle M. Schiller of this Court has recently concluded that "the current state of the case law requires a contractual obligation to compensation to state a WPCL claim." <u>Drummond v. Herr Foods, Inc.</u>, Civ. A. No. 13-5991, 2014 WL 80729 at *3 (E.D. Pa. Jan. 9, 2014) (citing <u>DeAsencio v. Tyson Foods, Inc.</u>, 342 F. 3d 301, 309 (3d Cir. 2003); <u>Scott v. Bimbo Bakeries</u>, <u>USA Inc.</u>, Civ. A. No. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012; <u>Braun v. Wal-Mart Stores, Inc.</u>, 24 A.3d 875, 954 (Pa. Super. 2011) ( "[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.")) Indeed, Judge Harvey Bartle III of this Court has even more recently come to the same conclusion. See <u>Gordon v. Maxim Healthcare Services</u>, 2014 WL 3438007 (E.D. Pa. July 15, 2014).

Here, there is no contractual obligation either written or oral for wages between the individual plaintiffs and XPO. Rather, any contractual obligation for wages is between the individual plaintiffs and numerous corporate entities. Therefore, the individual plaintiffs lack standing to bring a claim against XPO under the WPCL.

Plaintiff admits that the corporate entities that contracted with XPO cannot bring suit against XPO under the WPCL because they do not qualify as "employees" of XPO. See Frank Burns, Inc. v. Interdigital Communications Corp., 704 A.2d 678, 680-81 (Pa. Super. 1997) ("a corporation cannot qualify as an employee for purposes of the WPCL.")

Plaintiff contends, however, that he, as a natural person, can bring claims against XPO under the WPCL based on the fact that he was paid through a corporate entity that contracted with XPO.

Judge Robert F. Kelly of this Court rejected a similar argument by the plaintiff in Little v. USSC Group, Inc., 404 F. Supp. 2d 849 (E.D. Pa. 2005). Little, like many of the putative plaintiffs here, created a corporate entity (LTS) at USSC's request that contracted with USSC. The Court found that having done so, Little could not ignore that corporate entity's existence. Specifically, the Court stated:

> Regardless of how he viewed himself or how he was viewed by USSC, Little was not a party to the . . .Agreement between LTS and USSC . . . Although Little viewed LTS as a corporate entity of himself, by receiving the protections of the corporate entity, he created an intermediary between himself and USSC . . .By creating a corporate entity to accommodate USSC's request, Little also created a corporate entity that contracted with USSC. Little cannot now ignore that corporate entity's existence. Little is not a party to the Agreement between LTS and USSC. He, therefore, cannot claim a violation of the Pennsylvania WPCL.

404 F.Supp. 2d 849, 853-54 (E.D. Pa. 2005).

**6**

Likewise, the plaintiffs that formed corporations, limited liability companies and partnerships which contracted with XPO and paid the individuals through the corporate entity cannot ignore that corporate entity's existence and assert a claim directly against XPO.

Finally, plaintiff argues that discovery is necessary to determine whether the individuals who signed DSAs on behalf of corporations actually signed in their personal capacities. It is well-established that a natural person who signs a contract on behalf of a corporation is not personally bound by the contract's terms. See, e.g. <u>Accurso v. Infra-Red Servs. Inc.</u>, 23 F.Supp. 3d 494, 506 (E.D. Pa. 2014) (corporate officer who signed as company representative was not personally bound as a contracting party). Here, the sample DSA submitted by XPO expressly states on the signature block that the signatory is signing on behalf of the companies he represents. (ECF 16-3 at 13.) There is absolutely no mention of any personal responsibility. Nevertheless, out of an abundance of caution, the Court will direct XPO to turn over to plaintiff for inspection all 117 Contract Carrier Agreements so that plaintiff can make sure that no such individual signed an agreement with XPO in their personal capacity which could lead to a cause of action.